Kenny TURMAN, and Glen Upton, Inc., Plaintiffs–Respondents,

v.

SCHNEIDER BAILEY, INC., and Fireman's Fund Insurance Co., Defendants–Appellants.

No. WD 40071.

Missouri Court of Appeals, Western District.

Oct. 25, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1988.

Application to Transfer Denied May 16, 1989.

Howard D. Lay, Kansas City, for defendants-appellants.

Jack N. Bohm, Kansas City, for plaintiffs-respondents.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

NUGENT, Judge.

Schneider Bailey, Inc., and Fireman's Fund Insurance Co., defendants below, appeal after a jury trial, from judgments against them and orders denying their motions for judgment notwithstanding the verdict or for a new trial.

We affirm as modified the judgment against Schneider Bailey, and dismiss the appeal of Fireman's Fund Insurance Company as moot.

In February or March, 1985, plaintiff Kenny Turman purchased from plaintiff Glen Upton, Inc., the assets of a van conversion business.[1] Mr. Turman operated his business, called New Karefree Karavans, in the building next door to the one in which Mr. Upton had done business. These buildings were separated by a fenced lot. Mr. Upton permitted Mr. Turman to use his left over supplies, including billing invoices. Suppliers also billed Mr. Upton until Mr. Turman established credit. Mr. Upton, however, asserted neither control over nor a right to control the operation of New Karefree Karavans.

Dave Jacobson was an agent and co-venturer with defendant Rudy Langer, the president and sole stockholder of defendant Schneider Bailey, Inc. Mr. Jacobson, on June 28, 1985, purchased two Dodge Vans from Cort Floyd at Heart of America Auto Auction as a favor to Mr. Floyd, who needed to get the vans off his floor plan. Mr. Floyd was to repurchase the vans from Mr. Jacobson at a profit. Mr. Jacobson notified defendant Langer of this transaction. Mr. Floyd's drafts to repurchase the vans bounced, and he disappeared.

Mr. Jacobson paid for the vans with drafts totalling $20,150, dated June 28, 1985. The drafts were made to the order of Vans Unlimited, the creditor of Mr. Floyd's floor plan. Defendant Langer's bank thereafter paid the drafts, and he received documents of title to the vans, dated July 9, 1988.

Rick Kirby, from C.F. Body Shop at Heart of America Auction, instructed Mr. Turman to convert the vans. Mr. Turman filled out two work orders dated July 10 and July 12, representing the days on which he obtained the vans. The orders called for van conversions at $3,400 per van. About ten days later, when Mr. Langer came to his shop to see the vans, Mr. Turman first learned that the vans belonged to defendant Schneider Bailey. At that time he had completed work on one of the vans, and work on the second van was in progress. He testified that Mr. Langer told him to finish the second van and Mr. Langer would then "settle up" with him when it was completed.

Mr. Langer denied that he told Mr. Turman to finish work on the vans or that he would pay for the conversions. He admitted, however, that he did not ask for possession of the vans at that time, nor did he ask Mr. Turman to stop working on them.

Mr. Turman completed work on the vans and notified Mr. Langer of the completion. Then, on August 9, 1985, after Mr. Langer had failed to pick the vans up, he notified Schneider Bailey that he was awaiting payment for the vans, and that he would begin charging storage until Schneider Bailey paid for and picked up the vans.

Defendant Schneider Bailey made no demand for possession of the vans before receiving the notice from Mr. Turman, but on August 29, Schneider Bailey filed a petition for replevin in the associate circuit court of Jackson County. The petition alleged that Schneider Bailey had demanded possession of the vans from Mr. Turman and Glen Upton, Inc., and that they had refused to surrender possession. On September 5, Mr. Langer accompanied the

---

[1]. Converted or conversion as they are used in this opinion mean the physical alteration of a vehicle. These terms should not be confused with the legal usage of conversion, meaning unauthorized exercise of dominion or control over goods.

sheriff to Mr. Turman's and Mr. Upton's places of business to serve process on them. They did not take the vans with them, but Mr. Langer returned with Mr. Jacobson on September 9 and took them. Mr. Jacobson testified that Mr. Langer had told him that he intended to obtain the vans without paying for the conversion. Mr. Langer denied saying this.

Plaintiffs Turman and Upton each obtained counsel to defend the replevin action. Each paid five hundred dollars in attorney fees. The stated value of the vans was $15,000. Because the petition for replevin had been filed in associate circuit court, which at that time had a jurisdictional limit of $5,000,[2] the court, on September 23, 1985, sustained the plaintiffs' motion to dismiss for lack of jurisdiction. Defendant Schneider Bailey, however, retained possession of the vans until Mr. Jacobson later sold them.

Mr. Upton testified that he claimed no possessory interest in the vans, that he spent five hundred dollars defending the replevin action, and that he was personally and professionally embarrassed by being sued.

In the replevin action, defendant Fireman's Fund Insurance Company executed a bond on behalf of Schneider Bailey. In the instant lawsuit, it filed an answer, entered its appearance, and appeared by counsel at trial. Schneider Bailey filed a $40,000 cash bond pending the outcome of this appeal.

On October 7, 1987, a jury returned a verdict against Schneider Bailey and in favor of Kenny Turman for $8,200 damages for the work in converting the vans. The jury returned verdicts against Schneider Bailey in favor of both Mr. Turman and Glen Upton, Inc., for malicious prosecution awarding, each $12,390 actual damages and awarding $1,000 and $1,500 punitive damages to Mr. Turman and Upton, Inc., respectively. The jury returned verdicts in favor of defendant Rudy Langer on all counts.

This appeal followed.

In its appeal defendant Schneider Bailey assigns three points of error; first, that the trial court erred in entering its judgment on the malicious prosecution verdicts against the corporation because the jury found in favor of its agent, Rudy Langer, thus exonerating it as the principal; second, that the trial court erred in its denial of the motion for judgment notwithstanding the verdict or for a new trial or for not sua sponte setting aside all of the verdicts for failure to state a claim upon which relief could be granted; and, third, that this court should reverse the judgments for plain error.

Under its first point, Schneider Bailey mistakenly relies on *Burnett v. Griffith,* 739 S.W.2d 712 (Mo.1987) (en banc), to support its proposition that the verdict in favor of Rudy Langer exonerated Schneider Bailey as his principal. Although the *Burnett* court held that the jury's exoneration of the agent under the false imprisonment count also exonerated the principal, it did not preclude recovery against the principal on the separate count charging the principal with malicious prosecution. Because the principal's liability under the false imprisonment count could have arisen only from the tortious conduct of the agent, the verdict for the agent necessarily exonerated the principal. The verdict against the principal could not survive a motion for judgment notwithstanding the verdict in light of the exoneration of the agent. The pleadings and instructions on the malicious prosecution count, however, focused upon the actions of both the principal and the agent. Consequently, the jury could properly find in favor of the agent but find the principal liable for its own actions. *Id.* at 716.

■ In the present case, the jury received separate instructions under which it could have found against each defendant, plus separate damage instructions and separate verdict forms. In Count I of the petition, plaintiff Turman charged "[t]hat these acts were done exclusively by defendant, Rudy Langer, in his individual capaci-

**2.** See § 478.225, Revised Statutes of Missouri, 1978. The jurisdictional limit is now $15,000.

See § 478.225, Revised Statutes of Missouri, 1986, effective January 1, 1987.

ty, and other employees of Schneider Bailey, Inc...." and "[t]hat the action of Schneider Bailey, Inc. and Rudy Langer were done...." Plaintiff Turman then prayed for damages against "Defendants, Rudy Langer and Schneider Bailey, Inc." Schneider Bailey, Inc., brought the replevin action not Rudy Langer. Because of the separate claims against Schneider Bailey, the jury could, consistently with *Burnett,* have found against Schneider Bailey without finding against Rudy Langer. Therefore, Schneider Bailey's first assignment of error fails.

■ Schneider Bailey next contends that plaintiffs failed to prove the elements of the cause of action for malicious prosecution. To support a claim for malicious prosecution a plaintiff must show that the defendant instituted a judicial proceeding without probable cause and with malice; that the proceeding terminated in the plaintiff's favor; and that the plaintiff was damaged. *Zahorsky v. Griffin,* 690 S.W.2d 144, 147 (Mo.App.1985). *Haswell v. Liberty Mutual Ins. Co.,* 557 S.W.2d 628, 633 (Mo.1977) (en banc), defined probable cause as "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such persons that under the facts the claim may be valid under the applicable law."

■ Here, Schneider Bailey filed a replevin action with bond to obtain possession of the two vans. The plaintiff in a replevin action must plead and prove an immediate right to possession. *Olson v. Penrod,* 493 S.W.2d 673, 675–76 (Mo.App.1973); *Citizens Discount and Investment Corporation v. Wood,* 435 S.W.2d 717, 722 (Mo.App.1968). Schneider Bailey's right to possession in this instance, however, was subject to Mr. Turman's common law artisan's lien for his work converting the vans. Testimony at trial indicated that Mr. Langer approved of this work and was willing to "settle up" with Mr. Turman for the work. Before defendant instituted the replevin action Mr. Turman had notified it that the vans were ready and available upon pay-

ment. Defendant made no attempt to obtain possession of the vans before filing the replevin action, yet pleaded in the replevin petition that it had demanded possession, and its demand had been refused.

■ Although Mr. Langer denied that he authorized the completion of the van conversions, the jury could properly believe that he had. Plaintiff's work on the vans, then, entitled him to a common law lien that would defeat defendant's right to immediate possession. *See Jordan v. Davis,* 538 S.W.2d 595, 596 (Mo.App.1976); *Poole v. McKeen,* 654 S.W.2d 362, 364 (Mo.App. 1983). The above quoted definition of probable cause requires defendant Schneider Bailey to believe that under the applicable law it had a valid claim in replevin for immediate possession of the vans. Schneider Bailey was also in the repair business, and may be presumed to have been aware of the availability of the artisan's lien; it should have known that replevin was unavailable until it satisfied plaintiff Turman's lien on the vans. We conclude, therefore, that Schneider Bailey's claim was not supported by probable cause. *See Hughes v. Aetna Ins. Co.,* 261 S.W.2d 942, 950–51 (Mo.1953) (in a malicious prosecution suit, plaintiff's lien on automobile negated the possibility that he could be charged for its theft).

■ The evidence also showed that no probable cause existed to sue plaintiff Glen Upton, Inc., a business entity separate from New Karefree Karavans. Before instituting its suit, defendant Schneider Bailey had no evidence to show that Upton possessed or had any control over the vans. Mr. Langer's only contact with Mr. Upton was when he accompanied the process server to Mr. Upton's place of business. Defendant had no reason to believe that it could obtain possession of the vans by suing Glen Upton, Inc., in replevin. Therefore, the suit lacked probable cause.

■ Malice may be inferred from the absence of probable cause. *Young v. Jack Boring's, Inc.,* 540 S.W.2d 887, 896 (Mo.App.1976); *Hughes v. Aetna Ins. Co., supra.* Mr. Jacobson's testimony that defen-

dant Langer intended to obtain possession of the vans without paying for the conversion also supports the jury's finding of malice.

 Schneider Bailey further contends that, since the associate circuit court dismissed its action for lack of jurisdiction without prejudice, these plaintiffs did not achieve a favorable result. A favorable result arises from adjudication in the defendant's favor, withdrawal of the action by the plaintiff, or dismissal of the action because of the failure to prosecute. *McFarland v. Union Finance Co.*, 471 S.W.2d 497 (Mo.App.1971). In this case, the adjudication favored the defendants, that is, the present plaintiffs.

Moreover here, three months passed between the time the court dismissed the replevin action and the time those plaintiffs filed the instant suit. Because Schneider Bailey had obtained possession of the vans (the object of the replevin action) the plaintiffs had no reason to believe that Schneider Bailey would pursue the action further. In fact, it was against Schneider Bailey's interest to refile the replevin action, as such action would subject it to Mr. Turman's claim for damages for the conversion work on the vans. Because no real possibility existed that Schneider Bailey would refile the replevin action in a proper court, we conclude that defendant abandoned its suit.

 The final element that the plaintiffs must prove to establish a cause of action for malicious prosecution is that they were harmed by the unwarranted judicial proceeding. Both Mr. Turman and Mr. Upton paid attorney fees in that action. Attorney fees are a compensable element of damages in a suit for malicious prosecution. *Young v. Jack Boring's, Inc., supra.* Mr. Turman by losing possession of the vans lost his right to enforce his lien. Mr. Upton testified that he suffered embarrassment as a result of being sued. That constituted sufficient evidence to establish harm to the plaintiffs.

Therefore, because the evidence, viewed in the light most favorable to the plaintiffs, shows that defendant Schneider Bailey brought the replevin action without probable cause and with malice, that the suit terminated in favor of these plaintiffs, and that they were harmed by the suit, we conclude that the plaintiffs have stated a cause of action in malicious prosecution.

 Schneider Bailey also argues under point two that the plaintiffs failed to prove any cause of action to support recovery of $8,200 for the conversion work on the vans. The evidence showed that Schneider Bailey, through its agent Mr. Langer, promised to "settle up" with Mr. Turman for his work. The original work order showed a price for the work of $6,800 for both vans, thus providing evidence of the reasonable value of the work. The interest on that amount between the time Mr. Turman finished work and the time of trial would amount to $1,326, bringing the total to only $8,126. We conclude, therefore, that the evidence does not support the jury's award of $8,200, and that the award should be reduced to $8,126.

In point three, Schneider Bailey asks this court to reverse the judgments for plain error in that they are inconsistent and not supported by a cause of action or proof of facts and damages. Rule 84.13(c) provides that on appeal the court in its discretion may consider plain error affecting substantial rights, even though not raised or preserved below. In civil cases, however, the courts rarely invoke the plain error rule. *State ex rel. Missouri Highway and Transportation Commission v. McNary*, 664 S.W.2d 589, 595 (Mo.App.1984). The courts reserve the rule "for those situations in which passion or prejudice has been engendered causing manifest injustice or miscarriage of justice." *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App.1980).

 Our discussion above disposes of Schneider Bailey's complaints concerning the alleged inconsistent verdicts and the failure to establish a cause of action. The defendant also argues the excessiveness of damages under its assertion of plain error. From our review of the evidence, we have concluded that the award of $12,390 damages to each plaintiff and the punitive dam-

age awards of $1,000 and $1,500 did not result from passion or prejudice or work any manifest injustice.

Defendant Fireman's Fund Insurance Company also appeals from the court's entry of judgment against it on October 30. After that judgment, however, defendant Schneider Bailey deposited a cash appeal bond with this court. Because Fireman's Fund would only be liable on its bond upon Schneider Bailey's failure to pay the judgment, the deposit of a cash bond has rendered the judgment against Fireman's Fund moot, as plaintiff concedes. Therefore, we will not consider its allegations of error.

For the foregoing reasons, we dismiss the appeal of defendant Fireman's Fund as moot, and we order the damage award for verdict A to be reduced to $8,126. In all other respects, we affirm the judgment against defendant Schneider Bailey.

All concur.